IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                    )
EDMUND KEKAULA,                     )
                                    )
                    Plaintiff,      )
                                    )
v.                                  ) Civ. No. 17-00551 ACK-KJM
                                    )
NANCY A. BERRYHILL, Acting          )
Commissioner of Social Security,    )
                                    )
                    Defendant.      )
_____)


**ORDER REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL
SECURITY AND REMANDING FOR FURTHER PROCEEDINGS**

         For the reasons set forth below, the Court REVERSES

the decision of the Commissioner and REMANDS for further

administrative proceedings consistent with this Order.

**BACKGROUND**

         On August 28, 2014, Plaintiff Edmund Kekaula

("Plaintiff") protectively filed an application for Social

Security Disability Insurance ("SSDI") benefits, alleging

disability beginning on April 24, 2014.  Administrative Record

("AR") 166–72.  The application was initially denied on December

4, 2014, and was denied again upon reconsideration on June 1,

2015.  AR 13, 104–07, 109–13.  Plaintiff then requested a

hearing before an administrative law judge ("ALJ"), which was

held on May 19, 2016.  AR 13, 26.

On July 13, 2016, the ALJ issued her written decision finding that Plaintiff was not disabled.  AR 13–21.  Plaintiff filed a request with the Appeals Council to review the ALJ's decision on September 12, 2016.  AR 159–65.  The Appeals Council denied Plaintiff's request, finding no reason to review the ALJ's decision, and adopted the ALJ's decision as the final decision of the Commissioner on September 7, 2017.  AR 1–3.

Plaintiff filed a complaint on November 9, 2017, seeking a review of the denial of his application for SSDI benefits.  ECF No. 1.  On May 8, 2018, Plaintiff filed his opening brief.  ECF No. 18 ("Opening Br.").  Defendant, the Acting Commissioner of Social Security ("Commissioner"), filed her answering brief on May 22, 2018.  ECF No. 21 ("Ans. Br.").

The Court held a hearing on Tuesday, June 19, 2018 regarding Plaintiff's requested review of the Commissioner's decision.

## STANDARD

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security.[1]

A final decision by the Commissioner denying Social

---

[1] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

Security disability benefits will not be disturbed by the reviewing district court if it is free of legal error and supported by substantial evidence.  See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016) (reviewing a district court's decision de novo).  Even if a decision is supported by substantial evidence, however, it "will still be set aside if the ALJ did not apply proper legal standards."  See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions.  See id.  "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner."  Id. (internal quotation marks omitted).  Rather, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).  But reviewing courts must be

cognizant of the "long-standing principles of administrative law [that] require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225–26 (9th Cir. 2009); see also S.E.C. v. Chenery Corp., 332 U.S. 194, 196 (1947) (if the grounds "invoked by the agency . . . are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.")

## **DISCUSSION**

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see 42 U.S.C. § 423(d)(2)(A). A claimant must satisfy both requirements in order to qualify as "disabled" under the Social Security Act. Tackett, 180 F.3d at 1098.

- 4 -

## I.  The SSA's Five-Step Process for Determining Disability

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is disabled.  Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005); see 20 C.F.R. § 404.1520.  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  Ukolov, 420 F.3d at 1003 (citations omitted in original).  The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the SSA for step five.  Tackett, 180 F.3d at 1098.

At step one the ALJ will consider a claimant's work activity, if any.  20 C.F.R. § 404.1520(a)(4)(i).  If the ALJ finds the claimant is engaged in substantial gainful activity, he will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience.  20 C.F.R. § 404.1520(b).  Substantial gainful activity is work that is defined as both substantial (i.e., work activity involving significant physical or mental activities) and gainful (i.e., work activity done for pay or profit).  20 C.F.R. § 404.1572.  If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  Tackett, 180 F.3d at 1098.

Step two requires the ALJ to consider the medical

severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)
(4)(ii).  Only if the claimant has an impairment or combination
of impairments that "significantly limits [his] physical or
mental ability to do basic work activities" will the analysis
proceed to step three.  20 C.F.R. § 404.1520(c).  If not, the
ALJ will find the claimant is not disabled and the analysis is
complete.  20 C.F.R. § 404.1520(a)(4)(ii).

The severity of the claimant's impairments is also
considered at step three.  20 C.F.R. § 404.1520(a)(4)(iii).
Here, the ALJ will determine whether the claimant's impairments
meet or medically equal the criteria of an impairment
specifically described in the regulations.  Id.; see also 20
C.F.R. Part 404, Subpart P, App. 1.  If the impairments do meet
or equal these criteria, the claimant is deemed disabled and the
analysis ends.  20 C.F.R. § 404.1520(a)(4)(iii).  If not, the
analysis proceeds to step four.  20 C.F.R. § 404.1520(e).

Step four first requires the ALJ to determine the
claimant's residual functional capacity ("RFC").  Id.  RFC is
defined as the most the claimant can still do in a work setting
despite his physical and mental limitations.  20 C.F.R. §
404.1545(a)(1).  In assessing a claimant's RFC, the ALJ will
consider all of the relevant evidence in the claimant's case
record regarding both severe and non-severe impairments.  20
C.F.R. § 404.1545.  This assessment is then used to determine

whether the claimant can still perform his past relevant work.
20 C.F.R. § 404.1520(e).  Past relevant work is defined as "work
that [the claimant has] done within the past 15 years, that was
substantial gainful activity, and that lasted long enough for
[the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1).
The ALJ will find that the claimant is not disabled if he can
still perform his past relevant work, at which point the
analysis will end.  Otherwise, the ALJ moves to step five.

In the fifth and final step, the ALJ will once again
consider the claimant's RFC, as well as his age, education, and
work experience, in order to determine whether the claimant can
perform other work.  20 C.F.R. § 404.1520(a)(4)(v).  Here, the
Commissioner is responsible for providing "evidence that
demonstrates that other work exists in significant numbers in
the national economy that [the claimant] can do."  20 C.F.R. §
404.1560(c)(2).  If the claimant is unable to perform other
work, he is deemed disabled; if he can make an adjustment to
other available work, he is considered not disabled.  20 C.F.R.
§ 404.1520(g)(1).

## II.  **The ALJ's Analysis**

The ALJ found, at step one, that Plaintiff had not
engaged in substantial gainful activity since April 24, 2014,
the alleged onset date, and at step two, that he suffered from

the following severe impairments: status post stroke, status post myocardial infarction, and obesity.  AR 15–16.

At the third step, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404. Subpart P, Appendix 1.  AR 16–17.

Moving to step four, the ALJ determined that Plaintiff has the RFC to: "perform light work as defined in 20 CFR 404.1567(b) and SSR 83-10, except that: he can perform all postural activities only occasionally, and [] he can occasionally reach, grasp, and finger with the right (nondominant) upper extremity[.]"  AR 17.  Based on this RFC, the ALJ determined at step four that Plaintiff is able to perform past relevant work as a "House Officer, Security at a Hotel" and therefore is not disabled.  AR 19–20.  The ALJ further found that, in the alternative, a determination of "not disabled" would be appropriate at step five because Plaintiff is capable of engaging in a type of substantial gainful activity (that of Gate Guard) that exists in significant numbers in the national economy.  AR 20.  Plaintiff disputes the ALJ's decision regarding his RFC, contending that the ALJ's assessment of his treating physician's opinions was in error.  Opening Br. at 7. Plaintiff also contests the ALJ's credibility determinations. See Opening Br. at 5.

### III.   The Medical Opinions of Plaintiff's Treating Physician

The applicable regulations state that the Agency will consider all the medical opinions it receives.  See 20 C.F.R. § 404.1527(b), (c).  But in the realm of social security adjudications, physicians' opinions are not all created equal. "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also 20 C.F.R. § 404.1527(c)(2).  "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)).

### a. The September 2014 Opinion

On September 16, 2014, Dr. David Kwiat, Plaintiff's treating physician, diagnosed Plaintiff with stroke and right hemiparesis and reported that Plaintiff: could stand and/or walk

for three hours during an eight-hour workday; could sit for three hours during an eight-hour workday; did not need a job that permitted him to shift at will from sitting, standing, or walking; could frequently lift less than ten pounds, occasionally lift ten or twenty pounds, and never lift fifty pounds; could occasionally twist, stop, crouch, and climb; could never, during the course of an eight-hour workday, grasp/turn/twist objects with his right hand or perform fine manipulations with his right fingers; could reach with his right arm for 25% of an eight-hour workday; could grasp/twist/turn objects with his left hand, perform fine manipulations with his left fingers, or reach with his left arm for 50% of an eight-hour workday; could perform low-stress work; and would likely be absent from work for about three days a month as a result of his impairments or treatment. AR 282–84. At the administrative hearing, a vocational expert testified that either limitation to a six-hour workday or the need to be absent three times per month would render Plaintiff unable to work.[2] AR 74–75.

In December 2014, Dr. Lau, a State Agency medical consultant, reviewed Plaintiff's records and concluded that

---

[2] The Court notes that this is consistent with SSR 96-8p, which states: "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

Plaintiff could engage in medium work and frequent postural activities.  AR 19, 83–84.   Dr. Lau opined that Plaintiff could stand and/or walk for six hours during an eight-hour workday and could sit for the same amount of time.  AR 82.  Dr. Lau appears to have given no opinion as to the number of days Plaintiff would need to be absent from work due to his impairments or treatment.  In May 2015, another State Agency medical consultant, Dr. Matsuyama, reviewed Plaintiff's records and echoed Dr. Lau's conclusions, in large part reproducing them precisely—and again providing no opinion on the number of workdays per month Plaintiff's impairments or treatment would cause him to be absent.  AR 92–97.  Neither Dr. Lau nor Dr. Matsuyama examined Plaintiff.  AR 19.

In making her RFC finding, the ALJ gave "some weight, but not great weight" to Dr. Kwiat's September 2014 opinion, because it was "not based on the most recent medical evidence and is not fully supported by the evidence." AR 17.  The ALJ credited Dr. Kwiat's September 2014 opinion insofar as it supported a limitation to light work and to occasional postural activities, but she expressly credited Drs. Lau and Matsuyama's opinions (and discredited Dr. Kwiat) regarding Plaintiff's retention of some ability to use his right arm and full ability to use his left.  Id. at 18.  Moreover, she discredited Dr. Kwiat regarding the amount of time during a workday that

Plaintiff could stand, walk, and sit and the number of workdays per month he would be absent due to his impairments or treatment.  Id. at 17–19.

### 1. Whether the ALJ Failed to Consider the § 404.1527(c) Factors

A treating physician's medical opinion should be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." Ghanim, 763 F.3d at 1160 (alteration in original); 20 C.F.R. § 404.1527(c)(2).  Where a treating physician's opinion is contradicted by substantial evidence in the record, it is no longer afforded controlling weight; rather, the ALJ must "consider the factors set out in 20 C.F.R. § 404.1527(c)(2)–(6) in determining how much weight to afford the treating physician's medical opinion." Ghanim, 763 F.3d at 1161 (citing Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007)).  These factors include: the "length of the treatment relationship and the frequency of examination"; the "nature and extent of the treatment relationship"; the "[s]upportability" of the medical opinion; the consistency of the medical opinion with the record as a whole; whether the opining doctor is a specialist in the area at issue; and other factors brought to the Agency's attention.  20 C.F.R. § 404.1527(c)(2)–(6).  Failure to consider

these factors "alone constitutes reversible legal error,"
<u>Trevizo v. Berryhill</u>, 871 F.3d 664, 676 (9th Cir. 2017);
however, "the ALJ is not required to make an express statement
that she considered all these factors," <u>Kelly v. Berryhill</u>, No.
16-17173, 2018 WL 2022575, at *3 n. 4 (9th Cir. May 1, 2018),
nor need she explicitly analyze them in her decision.  <u>See</u>
<u>Harris v. Colvin</u>, 584 F. App'x 526, 527 n.1 (9th Cir. 2014)
("The agency was not required to specifically reference each
factor listed in 20 C.F.R. § 404.1527(c)."); <u>Velasquez v. Comm'r</u>
<u>of Soc. Sec.</u>, No. 1:17-CV-00612-SAB, 2018 WL 2077872, at *5
(E.D. Cal. May 3, 2018) (collecting district court cases to this
effect).

Plaintiff argues that, regarding the ALJ's partial
rejection of Dr. Kwiat's September 2014 opinion, the ALJ
committed reversible legal error by failing to consider the §
404.1527(c) factors.  Opening Br. at 17–19.  Finding the ALJ to
have given consideration to these factors, the Court disagrees.

The ALJ patently considered the treatment
relationship: On the issues of postural limitations and light
versus medium work, the ALJ gave Dr. Kwiat's opinion more weight
than the opinions of Drs. Lau and Matsuyama, noting Dr. Kwiat's
status as a treating physician "whose opinion is generally given
greater weight compared to nonexamining physicians." AR 19; <u>see</u>
<u>also</u> 20 C.F.R. § 404.1527(c)(2).  The ALJ also discussed

supportability and consistency in regard to Dr. Kwiat's
September 2014 opinion.  AR 18 ("There are no electrodiagnostic
studies or other medical evidence, however, to justify complete
preclusion on use of the right upper extremity or any
limitations on the left upper extremity."; "While the medical
record indicates that the claimant has limitations, the medical
record does not justify additional limitations beyond those
adopted above."); see also 20 C.F.R. § 404.1527(c)(3), (4).

Plaintiff alleges in particular that the ALJ erred in
failing to discuss Dr. Kwiat's status as a board-certified
internist.  Opening Br. at 18.  While expressing no opinion on
whether the practice of internal medicine is in fact a
specialty, the Court notes again that explicit discussion of
each § 404.1527(c) factor is not required.  The ALJ's decision
reflects consideration of the § 404.1527(c) factors, and so the
Court finds no error here.

2. **Whether the ALJ's Proffered Rationale for
Partially Rejecting Dr. Kwiat's September
2014 Opinion Was Inadequate**

An ALJ may not disregard or give short shrift to
treating physician's opinion, even if contradicted.  See Ghanim,
763 F.3d at 1161.  "If a treating or examining doctor's opinion
is contradicted by another doctor's opinion, an ALJ may only
reject it by providing specific and legitimate reasons that are

supported by substantial evidence." Trevizo, 871 F.3d at 675

(quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.

2005)).  An ALJ errs when she "merely states that the objective

factors point toward an adverse conclusion and makes no effort

to relate any of these objective factors to any of the specific

medical opinions and findings he rejects."  Embrey v. Bowen, 849

F.2d 418, 422 (9th Cir. 1988).

Plaintiff argues that the ALJ's provided rationale for

rejecting Dr. Kwiat's September 2014 opinion is "legally

insufficient and/or factually inaccurate."  Opening Br. at 19.

The Court agrees in part.

The ALJ rejected Dr. Kwiat's opinion regarding

limitations on Plaintiff's use of his left arm, hand, and

fingers—an opinion that was contradicted by Drs. Lau and

Matsuyama.  AR 18–19.  In doing so, the ALJ pointed to the

absence of "electrodiagnostic studies or other medical evidence

. . . to justify any limitations on the left upper extremity."

AR 18.  This specific, legitimate reason is supported by

substantial evidence in the record (namely, the absence from the

record of evidence supporting left-side limitations), and thus

this was not error.

The ALJ also rejected Dr. Kwiat's September 2014

opinion regarding the extent of Plaintiff's right-side

limitations, as well as the amount of time he could stand, walk,

and sit during a workday and the number of workdays per month Plaintiff would likely miss due to his impairments and/or treatment. AR 17–19. Here the ALJ erred.

The ALJ explained her decision ultimately to reject Dr. Kwiat's September 2014 opinion on these scores by noting that his opinion "is not based on the most recent medical evidence, and it is not fully supported by the evidence." AR 19. She further noted that "[t]he medical evidence (and the fact that claimant is working part-time) . . . does not support" Dr. Kwiat's opinion regarding Plaintiff's right-side limitations, the amount of time he could stand, walk, and sit, or his monthly absences from work. Id. The ALJ conducted a review of the medical evidence, listing the Plaintiff's hospital visits and the raw results of various tests. AR 18.

Regarding Plaintiff's right-side restrictions, the ALJ's explanation for rejecting Dr. Kwiat's September 2014 opinion is insufficient for its lack of specificity. The ALJ's gestures to "medical evidence" and her invocation of Plaintiff's part-time work lack any explicit relation to the findings she rejects. See Embrey, 849 F.2d at 422. The absence of the requisite specificity makes difficult a full assessment of either the legitimacy of the proffered reasons or the extent to which they are supported by substantial evidence in the record, and is itself error.

These explanations are also insufficient as reasons to reject Dr. Kwiat's September 2014 opinion regarding the amount of time during each workday that Plaintiff could sit, walk, and stand. The ALJ's gestures at "medical evidence" are insufficient for the same reasons as noted above. Her invocation of Plaintiff's part-time work is also lacking. The record reveals that, in the course of his part-time work, Plaintiff worked two eight-hour days per week, and that he spent roughly three hours per workday standing. AR 35–37. But the record does not speak to Plaintiff's posture during the other five hours per workday,[3] and the ALJ's explanation of her reasoning on this score is non-specific and thus in error.

Finally, the ALJ's proffered reasons are insufficient in regard to Plaintiff's likely absences from work. As above, the invocation of "medical evidence"[4] and Plaintiff's part-time work lacks specificity. Moreover, the citation of Plaintiff's part-time work lacks legitimacy as a reason to reject Dr. Kwiat's September 2014 opinion on this matter. That Plaintiff

---

[3] The most the record contains on the subject is Plaintiff's testimony that the time not spent standing and bringing in planes was "our time, our break time." AR 36–37.

[4] Significantly, neither Dr. Lau nor Dr. Matsuyama offered an opinion regarding the number of workdays Plaintiff would likely miss due to his impairments or treatment. To the extent the ALJ's citation of "medical evidence" is intended to invoke these non-examining doctors' opinions, her reason lacks both legitimacy and support by substantial evidence.

testified he has "not often" missed workdays at his two-day-a-week job, AR 37,[5] does not support the conclusion that, were he working five days per week, he would not miss three days per months as result of his impairments and/or treatment.

In sum, the Court finds that the ALJ erred by failing to provide specific reasons for rejecting Dr. Kwiat's September 2014 opinion regarding Plaintiff's right-side limitations, the number of hours per day he could stand, walk, and sit, and the number of workdays per month he would be absent due to his impairments and/or treatment. Due to the absence of the requisite specificity, the Court is unable to assess the ALJ's reasoning on most of these points for legitimacy or substantial support within the record. The ALJ's citation of the Plaintiff's part-time work, though specific, lacks legitimacy.

b. **The December 2015 Opinion**

Federal agencies are bound to abide by the regulations they promulgate. <u>Sameena Inc. v. U.S. Air Force</u>, 147 F.3d 1148, 1153 (9th Cir. 1998). The Agency is thus under a regulatory duty to consider all medical opinions it receives in making a disability determination. 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider

---

[5] Defendant's brief, which states that "Plaintiff testified that he had not missed work at Mokulele Airlines because of health issues," Ans. Br. at 10, mischaracterizes the record in this respect.

the medical opinions in your case record together with the rest of the relevant evidence we receive."), (c) ("Regardless of its source, we will evaluate every medical opinion we receive."); see also Podgorney v. Barnhart, 214 F. App'x 648, 649–50 (9th Cir. 2006) (finding the Agency in violation of "its own regulations requiring it to consider all relevant medical evidence in making a disability determination" and remanding a denial of benefits for reconsideration). Where it is evident that this has not occurred, the Ninth Circuit has deemed it appropriate to remand the matter for proper consideration of the omitted medical opinion(s). See Thelen v. Astrue, 253 F. App'x 705, 706–07 (9th Cir. 2007) (directing remand to the Agency for proper consideration of medical opinion submitted to the Agency but not before the ALJ); Podgorney, 214 F. App'x at 649–50 (directing remand to the Agency for proper consideration of medical documents submitted to the ALJ but omitted from the administrative record).

One of the most salient issues in this case is the status of Dr. Kwiat's December 2015 opinion. On December 3, 2015, Dr. Kwiat completed a second medical source statement, diagnosing Plaintiff with dyspnea with exertion. AR 622–24. In addition to setting forth a different diagnosis than did his September 2014 opinion, Dr. Kwiat's December 2015 opinion elucidates different restrictions on Plaintiff's activities.

Id.  In some senses, these restrictions are less stringent than those set forth in September 2014: In December 2015, Dr. Kwiat opined that Plaintiff has no significant limitations with the arm, hand, or fingers on either side, and that he can tolerate moderate work stress.[6]  AR 623–24.  In two respects, the limitations elucidated were the same: Plaintiff can occasionally twist and stoop.  AR 623.

But the December 2015 opinion also notes that Plaintiff: can stand and/or walk for only zero to two hours per workday; can sit for the same period of time; needs a job that permits him to shift at will from sitting, standing, or walking; can occasionally lift and carry up to ten pounds, rarely lift and carry twenty pounds, and never lift and carry fifty pounds; can only rarely crouch/squat, and can never climb; experiences pain or other symptoms that constantly interfere with the attention and concentration needed to perform even simple work tasks; and is likely to be absent from work more than four days per month as a result of his impairments or treatment.  AR 623– 24.

---

[6] It is unclear to the Court whether this signifies that Plaintiff had by this time improved in these respects or that these limitations did not result from the diagnosis of dyspnea with exertion.  Neither party has addressed this issue or made it significant.

The December 2015 opinion appears to have been
submitted to the Agency on December 11, 2015, some five months
prior to the hearing before the ALJ.  <u>See</u> AR 162, 625
(receipts); <u>see also</u> AR 622–25 (the December 2015 opinion,
included in the administrative record as Exhibit 6F).  What
happened next is unclear.  Somewhat disturbingly, neither
Plaintiff's representative nor the Agency displayed any
awareness of the December 2015 opinion until well after the
hearing.  Plaintiff's pre-hearing brief contains no mention of
it, AR 261–63, and Plaintiff's counsel apparently made no
reference to its contents during the hearing, AR 28–76.[7]  The
opinion is absent from the ALJ's exhibit list, AR 22–25, and
Plaintiff's counsel did not seek to introduce further exhibits
at the hearing, AR 29.  Finally, and as Plaintiff underlines,
Opening Br. at 13–16, the ALJ made no reference to the opinion
in her decision, AR 13–21.

Not until Plaintiff's exchange with the Appeals
Council did either Plaintiff's counsel or the Agency exhibit
awareness of this opinion.  Plaintiff's request for review of

---

[7] Notable in particular is the fact that Plaintiff's attorney,
while questioning the vocational expert, posited a hypothetical
in which Plaintiff were limited to three hours per day each of
standing/walking and sitting.  AR 74–75.  These limitations are
consistent with Dr. Kwiat's September 2014 opinion, AR 282–84,
but are less restrictive than his December 2015 opinion, which
opined that Plaintiff was limited to two hours per day of
standing/walking and of sitting, AR 622–25.

the ALJ's decision is built in part around the December 2015 opinion, AR 159–61, and Plaintiff's counsel included as an attachment the opinion itself, along with what appears to be a receipt confirming the opinion's submission to the Agency on December 11, 2015, AR 162–65. For its part, the Appeals Council denied Plaintiff's request for review, stating explicitly that it "did not consider and exhibit this evidence," AR 2; however, it did receive Plaintiff's request for review, complete with attachments, into the record, AR 5, 159–65 (Exhibit 13B).

Plaintiff contends that the December 2015 opinion was submitted to and received by the Agency well before the hearing, and that therefore the ALJ's failure to evaluate it constituted legal error.[8]  Opening Br. at 13–14; <u>see also</u> 20 C.F.R. § 404.1527(b), (c).  Defendant, on the other hand, argues in both her brief and at the hearing that the opinion was made part of the record by the Appeals Council, and that therefore the Court may consider it in its substantial evidence review, <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1163 (9th Cir,. 2012)—but that "since the ALJ had no opportunity to review" the opinion, her failure to discuss it cannot constitute reversible error.  Ans. Br. at 14.  Having closely examined the record and

---

[8] Plaintiff further argues that the ALJ's decision is not supported by substantial evidence.  Opening Br. at 15.

relevant legal authorities, the Court finds reversible error
here.

Defendant's framing of the events, a prerequisite to
the application of her preferred legal standard, is at odds with
the record.  The Court certainly does not take issue with the
proposition supported by Brewes—that "when the Appeals Council
considers new evidence in deciding whether to review a decision
of the ALJ, that evidence becomes part of the administrative
record, which the district court must  consider when reviewing
the Commissioner's final decision for substantial evidence."
682 F.3d at 1163.  But neither does the Court find this to be
applicable here.  The Appeals Council explicitly "did not
consider" the December 2015 opinion.  AR 2.[9]  Where the Appeals
Council does not consider evidence submitted to it, that
evidence does not become part of the administrative record.  See
Bales v. Berryhill, 688 F. App'x 495, 496 (9th Cir. 2017); see
also Knipe v. Colvin, No. 3:14-CV-01533-SI, 2015 WL 9480026, at
*5 (D. Or. Dec. 29, 2015) (collecting district court cases to

_____

[9] A fuller quotation of the Appeals Council's treatment of this
issue may help explain the confusion on this point: "We find
this evidence does not show a reasonable probability that it
would change the outcome of the decision.  We did not consider
and exhibit this evidence."  AR 2.  The Court notes that, in
this context, "consider" is a term of art.  See Ruth v.
Berryhill, No. 1:16-CV-0872-PK, 2017 WL 4855400, at *9 (D. Or.
Oct. 26, 2017) (collecting cases).  The Appeals Council appears
to have looked at the December 2015, but explicitly did not
consider it.  AR 2.

this effect).  And in case there were any doubt, the Appeals Council here was explicit that it "did not . . . exhibit this evidence." AR 2.

And yet the administrative record includes both the December 2015 opinion, AR 622–25 (Exhibit 6F), and two separate pages that appear to establish that the opinion was submitted to and received by the Agency five months prior to the hearing,  AR 162, 625.  Rather than ascribing miscreance to both sides—i.e., finding the organization that represented Plaintiff to have fabricated the electronic receipts, and the Appeals Council to have considered the opinion and incorporated it into the administrative record while declaring that it was not doing so— the Court deems it most likely that there was on each side some failure of communication and/or recordkeeping: that Premier Services, LLC (the organization Plaintiff employed to represent him, AR 158) submitted the opinion but failed to make his hearing counsel aware of it prior to the hearing, and that the Agency failed to incorporate the opinion into the administrative record in a timely fashion.  Whatever the precise chain of events, however, it appears from the record that the December 2015 opinion was submitted to and received by the Agency prior to the hearing but was not before the ALJ.

The Ninth Circuit has found remand to be appropriate in similar circumstances.  In Thelen, 253 F. App'x at 705, a

letter from the claimant's treating psychologist was submitted
to the Agency but was not before the ALJ. Id. at 706-07. The
letter was later "found at the bottom of the claim file" and was
included in the Appeals Council's exhibits. Id. at 707.[10] The
Ninth Circuit ascribed substantial importance to the fact that
"the ALJ did not have all parts of the record before him" and
remanded the matter for reconsideration. Id. at 706.
Similarly, in Podgorney, 214 F. App'x at 648, a claimant
submitted three medical documents that were not incorporated
into the administrative record. Id. at 649. The Ninth Circuit
noted that this failure meant that the omitted documents could
not "properly be considered as part of the record on which the
ALJ's decision was based," and that "[c]onsequently, the Agency
violated its own regulations requiring it to consider all
relevant medical evidence in making a disability determination."
Id. at 650. Accordingly, the Ninth Circuit ordered remand for
proper consideration of the omitted medical documents. Id. at
649.

Following the Ninth Circuit's actions in similar
circumstances, the Court holds that remand for proper
consideration of the December 2015 opinion is appropriate.

---

[10] It is unclear from the Ninth Circuit's opinion, as here,
whether the Appeals Council incorporated the letter itself into
the record or whether it was incorporated along with a request
for review to which it was attached.

The Court notes that an alternative view of the status of the December 2015 opinion—one that accepts the Agency's contention that the Appeals Council did consider it and incorporate it into the administrative record—changes the analysis but not the ultimate result.  The Court therefore holds, in the alternative, that in light of the December 2015 opinion, the ALJ's decision is not supported by substantial evidence.

"Evidence submitted to and considered by the Appeals Council . . . is part of the administrative record properly before the district court." Brewes, 682 F.3d at 1164. Therefore, such evidence is properly considered by the reviewing district court in its determination of whether the ALJ's decision was supported by substantial evidence.  See id. at 1162–63.

In making both her step-four and alternative, step-five findings—both in favor of non-disability—the ALJ expressly "accept[ed] the vocational expert's testimony."  AR 19–20.  But in addition to testifying, in response to various hypotheticals, about whether or not Plaintiff could perform either his past relevant work or another type of substantial gainful work, the vocational expert noted that Plaintiff would be unemployable if he were to be absent from work three times per month due to his impairments and/or treatment (as Dr. Kwiat opined in September 2014 that he would be).  AR 74, 284.

The ALJ rejected Dr. Kwiat's September 2014 opinion regarding Plaintiff's likely absences, in part because that opinion was "not based on the most recent medical evidence."  AR 19.  But of the four physicians' opinions[11] in the complete administrative record, Dr. Kwiat's December 2015 opinion—stating that Plaintiff would be absent even more frequently (more than four days per month, AR 624)—is based on the most recent medical evidence.  See AR 578–83 (Dr. Kwiat's December 2015 treatment notes); see also AR 80–86 (Dr. Lau's December 2014 opinion); AR 92–99 (Dr. Matsuyama's May 2015 opinion).

And especially in light of that opinion, nothing else to which the ALJ pointed constitutes substantial evidence to support an ultimate conclusion that necessarily comprehends a finding that Plaintiff would not be absent several days per month.  In discussing her decision to assign "some weight, but not great weight" to Dr. Kwiat's September 2014 opinion, the ALJ also cited "[t]he medical evidence" and "the fact that claimant is working part-time."  AR 19.  The ALJ's only step-four discussion of medical evidence comprises two paragraphs listing dates of treatment and test results.  AR 18.  Since no connection is apparent between the medical evidence as presented in the opinion and the ALJ's conclusion that Plaintiff would not

---

[11] These four opinions issue from three physicians: Dr. Kwiat contributed two, and Drs. Lau and Matsuyama each submitted one.

need to be excessively absent, the ALJ's invocation of such evidence does not constitute substantial evidence supporting her decision.[12] See Chenrey, 332 U.S. at 196 (if the grounds an agency invokes "are inadequate or improper, the court is powerless to affirm . . . by substituting what it considers to be a more adequate or proper basis").

Similarly, the ALJ's statement that Plaintiff was working part-time does not constitute substantial evidence; not only did the ALJ fail to explain her reasoning, see id., but the Court sees no inherent conflict between a two-day-a-week job from which Plaintiff is "not often" absent, AR 37, and the notion that Plaintiff's impairments and/or treatment would cause him to miss several days per month of a five-day-a-week job.

In view of the administrative record as a whole, including Dr. Kwiat's December 2015 opinion, it cannot be said that the ALJ's decision, comprehending as it necessarily did a finding that Plaintiff would not be rendered unemployable by his

---

[12] Again the Court notes and finds significant the fact that neither Dr. Lau nor Dr. Matsuyama opined on the extent to which Plaintiff would be absent from work due to his impairments or treatment; in other words, those portions of the medical evidence comprising the non-examining physicians' opinions lend the ALJ's decision no support on this issue.

disability-related absences, is supported by substantial evidence.[13]

IV.   **Whether the ALJ Erred in Her Credibility Finding**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first "determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." <u>Id.</u> (internal quotation marks and citation omitted). "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." <u>Id.</u> (internal quotation marks and citation omitted).

---

[13] The Court also notes that the addition to the administrative record of the December 2015 opinion undermines the ALJ's RFC finding as concerns Plaintiff's standing/walking and sitting limitations.  As discussed previously, the ALJ failed to provide the requisite specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Kwiat's September 2014 opinion on this score.  The addition to the record of an additional opinion from this treating physician supporting the proposition that Plaintiff's standing/walking and sitting limitations would render him disabled underscores the fact that the ALJ's RFC finding is not supported by substantial evidence in the record.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." Id. In addition, "[a] finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation marks omitted).

Here, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," AR 18, and there was no apparent record evidence of malingering (nor did the ALJ point to any). But in her step-two analysis, the ALJ concluded that "the testimony and statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record . . . ." AR 18. In so concluding, the ALJ discredited much of Plaintiff's testimony, including each piece that was inconsistent with her RFC finding. AR 17–18. In particular, the ALJ discredited Plaintiff's

testimony regarding his difficulty walking and the amount of

time he could sit or stand.[14]

Plaintiff contends that the ALJ's credibility

determination was in error. Opening Br. at 26-27.[15] Finding two

of the ALJ's proffered reasons for her credibility finding to be

---

[14] Plaintiff testified that he had to rest after walking the
distance from a parking lot to a store, and that he could not
sit or stand for longer than thirty minutes at a stretch. AR
57-58, 208. The ALJ determined that Plaintiff was capable of
"light work as defined in" 20 C.F.R. § 404.1567(b). AR 17. §
404.1567(c)'s definition of "light work" includes jobs that
entail "a good deal of walking or standing" and those that
involve "sitting most of the time with some pushing and pulling
of arm or leg controls."

[15] Defendant, citing Ruiz v. Commissioner of Social Security
Administration, 490 F. App'x 907, 908 (9th Cir. 2012), argues
that Plaintiff has conceded the validity of several of the ALJ's
factual findings by not specifically challenging each of them.
Ans. Br. at 18. The Court does not read Ruiz as requiring
claimants at the district court level to either dispute or
concede each individual reason provided for an ALJ's credibility
determination; rather, the claimant in Ruiz appears to have
limited her protestations regarding the ALJ's credibility
determination to a single factual finding, and specifically to
the ALJ's rejection of particular testimony, leaving both the
overall credibility determination and the other factual findings
that supported it unchallenged in her appeal to the Ninth
Circuit. Ruiz, 490 F. App'x at 908-09 ("Here too, Ruiz limits
her argument on appeal. Her only challenge relates to the ALJ's
conclusions regarding the severity of her mental illness."). In
the instant case, by contrast, the Plaintiff—admittedly somewhat
inartfully—levels a broad challenge against the ALJ's
credibility determination, labeling it "generally defective" and
invoking, writ large, his previous arguments "with respect to
the evidence related to Plaintiff's impairments and work-related
limitations". Opening Br. at 26-27. Since the Plaintiff has
challenged the ALJ's credibility determination, the Court
analyzes that determination according to the standards that
prevail within the Ninth Circuit.

insufficiently specific, clear and convincing, the Court finds error.

In support of her adverse credibility finding, ALJ listed in her decision Plaintiff's activities of daily living, concluding with no analysis that Plaintiff's ability to "perform[] personal care activities," "make simple meals," "do light housework," "drive a car," "shop in stores," "h[a]ng out with friends in the mall," and "walk[] in the air conditioning for exercise" are "not consistent with [Plaintiff's] allegations of disabling pain and symptoms." AR 18. But, as the ALJ herself points out, a claimant need not be utterly incapacitated in order to be disabled. Vertigan, 260 F.3d at 1049. The ALJ notes no inconsistencies between the Plaintiff's testimony regarding his limitations and his activities of daily living, and "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Id. at 1050. The ALJ's invocation of the Plaintiff's activities of daily living is not a clear and convincing reason to find non-credibility.

Moreover, in discussing the Plaintiff's medical record, the ALJ highlighted Plaintiff's "only 'mildly positive'" stress test in February 2015, his normal physical examination in November 2015, his negative heart catheterization in December

2015, and the stenosis of his left main and left anterior descending arteries in February 2015, concluding that "the medical record does not justify additional functional limitations beyond those adopted" in her RFC finding.  AR 18. But this discussion "includes no analysis of how or why [Plaintiff's] symptom testimony was inconsistent with the objective medical evidence."  Hardison v. Berryhill, 703 F. App'x 513, 515 (9th Cir. 2017).  See also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (requiring an ALJ's reasons for discounting a claimant's testimony to be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").  Because the ALJ's discussion of the medical evidence is insufficiently specific and clear, the Court finds this proffered reason for the ALJ's adverse credibility determination to be wanting.

     The ALJ further pointed to: the fact that Plaintiff played softball in January 2016; Plaintiff's part-time work; and Plaintiff's limited treatment record.  Each of these specific reasons for the ALJ's credibility finding is clear and convincing, and supported by substantial evidence.

     (1) Although the record contains no evidence regarding the vigor or duration of Plaintiff's participation in softball, it was reasonable for the ALJ to view Plaintiff's participation as presenting an inconsistency with his testimony regarding his

limited mobility, especially in light of the fact that the Plaintiff played vigorously enough on this occasion as to sustain a "likely sprain" to his left ankle.  AR 562.

(2) The ALJ's invocation of Plaintiff's part-time work is likewise clear and convincing.  The ALJ stated that "the fact that the claimant is working outdoors with no medical restrictions and standing around 3 hours per day . . . is yet another indication that his functional limitations are not as significant as alleged." AR 18.  Plaintiff indicated that he had to rest for several minutes after walking the distance from a parking lot to a store, AR 208, and yet no similar restrictions seem to impact his ability to work at Mokulele Airlines—work that includes regularly pushing a cart containing the baggage of nine passengers, AR 52.  Plaintiff's ability to work for an eight-hour day with no medical restrictions appears inconsistent with his testimony regarding his very limited mobility and presents a clear and convincing reason to discredit his testimony.

(3) The ALJ further pointed to the Plaintiff's "minimal treatment record," listing Plaintiff's relatively infrequent medical visits since the alleged onset date and pointing to the fact that "there is no evidence that [Plaintiff] does not have access to medical care." AR 18.  An ALJ may properly consider "unexplained or inadequately explained failure

to seek treatment or to follow a prescribed course of treatment," Molina, 674 F.3d at 1112 (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)) in making her credibility determination, as a paucity of treatment tends to indicate that symptoms are not all-disabling. See Tommasetti, 533 F.3d at 1039 (finding a claimant's failure to seek an aggressive treatment program to undermine his testimony regarding disabling symptoms). The Court finds this proffered reason to be sufficiently specific, clear and convincing.

In addition to his broad allegation of error, Plaintiff argues that the ALJ erred in particular by neglecting to explicitly consider Plaintiff's "stellar work history." Opening Br. at 26. The Court notes that, while the regulations make work history a proper consideration in the assessment of a claimant's symptoms, § 404.1529(c)(3), the Court can find no controlling case law, and nor does Plaintiff point to any, to support the proposition that an ALJ must *address* a claimant's work history in making her credibility determination. Here, the ALJ stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 96-4p and SSR16-3p." AR 17. The Court finds that the ALJ's failure to explicitly address the claimant's work history was not error.

### V. Harmless Error and Remand

"An error is harmless only if it is inconsequential to the ultimate non-disability determination . . . or if despite the legal error, the agency's path may reasonably be discerned." Brown-Hunter, 806 F.3d at 494 (internal quotation marks and citation omitted) (finding that because the ALJ did not provide any reasons upon which her conclusion was based, the agency's path could not be reasonably discerned). The Ninth Circuit has indicated that in order to consider an error harmless, the reviewing court must be able to "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015).

### a. Regarding Credibility

Having found two of the ALJ's proffered reasons for her adverse credibility determination to be insufficient, the Court must determine whether these errors were harmless. See Carmickle v. Comm'r, 533 F.3d 1155, 1162 (9th Cir. 2008). "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such error is deemed harmless and does not warrant reversal." Id. (quoting Baston v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004)).

Here, the ALJ's finding that Plaintiff was not fully credible is valid on the basis of the reasons the Court found to be sufficiently specific, clear and convincing: Plaintiff's participation in softball, his ability to work for full days without medical restriction, and his minimal treatment record. As discussed above, each of these reasons is specific, clear and convincing; each is supported by substantial evidence in the record; and together they support the ALJ's ultimate credibility determination. In view of Plaintiff's sparse treatment record and his ability to play softball and to work without medical restrictions, it was reasonable for the ALJ to discredit Plaintiff's testimony with regard to his mobility limitations. Her reliance on the two additional reasons the Court finds to be lacking is therefore harmless.

b. **Regarding the Medical Opinions of Plaintiff's Treating Physician**

The errors regarding Dr. Kwiat's opinions were not harmless. Had the ALJ properly considered Dr. Kwiat's September 2014 opinion and his December 2015 opinion, she may have given Plaintiff a more restrictive RFC than the one given in her decision. That, in turn, may have led to a finding that Plaintiff is disabled. In light of these errors, this Court cannot confidently conclude that no reasonable ALJ would reach a

different decision. Accordingly, these errors were not harmless and the ALJ's decision must be reversed.

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). However, where the record is fully developed and "further administrative proceedings would serve no useful purpose," a court should remand for an immediate award of benefits. Id. "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). But the Ninth Circuit has cautioned that "[a] remand for an immediate award of benefits is appropriate ... only in rare circumstances." Brown-Hunter, 806 F.3d at 495 (internal quotation marks omitted).

In this case, the Court finds that enhancement of the record would be useful. The Court, therefore, holds that remand for further proceedings is appropriate for the ALJ to properly consider the opinions of Plaintiff's treating physician, Dr. Kwiat. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision denying Social Security disability

benefits and REMANDS to the ALJ for further proceedings

consistent with this Opinion.


IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, June 27, 2018.



_____
Alan C. Kay
Sr. United States District Judge


Kekaula v. Berryhill, Civ. No. 17-00551 ACK-KJM, Order Reversing
the Decision of the Commissioner of Social Security and
Remanding for Further Proceedings.